ECF CASE

JUDGE CROTTY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

NORTH PLAINS SYSTEMS CORP.

                       Plaintiff,

   -against-

LIVID MEDIA LLC

                      Defendants.
-------------------------------------------------------------X

08 CV 00412

(PAC|KNF)

COMPLAINT



RECEIVED
JAN 16 2008
U.S.D.C. S.D.N.Y.
CASHIERS

Plaintiff, North Plains Systems Corp., ("Plaintiff" or "North Plains"), by its attorneys, Kaufman Borgeest & Ryan LLP, as and for its complaint against Defendants, Livid Media LLC ("Livid" or "Defendant"), avers as follows:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. 1332 (Diversity of Citizenship), as North Plains is a citizen of a foreign state, Livid is a citizen of the states of Delaware (Livid's place of incorporation) and Georgia (the location of Livid's principal place of business), and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

2.     Venue in this Court is proper pursuant to the choice of law contracted for by the parties in the agreement which forms the basis of this action.

## PARTIES

3.     Plaintiff is an active foreign corporation, organized under the laws of the Province of Ontario, Canada, with its principal place of business located at 510 Front Street West, 4th Floor, Toronto, Ontario, M5V 3H3 Canada.

4.    Plaintiff is in the business of providing digital asset management solutions to various businesses' rich media assets, such as pictures, video and audio.  Plaintiff has created a technology ("Software") which it uses as a platform to provide solutions to its various clients' rich media management issues.

5.    Upon information and belief, Defendant Livid is an active foreign limited liability company, incorporated in Delaware, with a principal place of business in Atlanta, Georgia.

## FACTUAL ALLEGATIONS

6.    On July 13, 2007 Plaintiff and Defendant entered into a Master License and Services Agreement ("MLSA"), by which Plaintiff agreed to grant Defendant a license to use Plaintiff's Software during the term of the MLSA.  A copy of the MLSA is attached as Exhibit A and incorporated by reference.  The MLSA includes a provision for Plaintiff's recovery of the costs of collection, including courts costs and reasonable attorney's fees, and for interest from the invoice date/s of the lesser of: (a) 1.5% per month, or (b) the highest rate permitted by law.

7.    Plaintiff further provided documentation to facilitate the use of the Software as well as maintenance and support services, the details of which were set forth in the MLSA.

8.    As part of the MLSA, Plaintiff also provided professional services in connection with the Software, including implementation, consulting, analysis and training, the details of which were also set forth in the MLSA.

9.    In consideration for the Software licenses, maintenance services, and professional services, Defendant agreed to pay Plaintiff the fees set forth in the MLSA in accordance with the agreed upon payment terms.

10.    Under the terms of the MLSA, Defendant was to pay the license fees in three installments forty (40) percent being due upon execution of the MLSA, forty (40) percent being

due on the date of shipment of the Software by Plaintiff, and twenty (20) percent being due thirty (30) days from the date of shipment of the Software by Plaintiff.

11.     As per the terms of the MLSA, the license fees totaled $135,000.

12.     Thus, as of the date the MLSA was executed, July 13, 2007, Defendant owed Plaintiff $54,000.

13.     Plaintiff shipped the Software to Defendant on July 19, 2007.

14.     Thus, as of July 19, 2007, Defendant owed Plaintiff a second payment of $54,000, totaling $108.000.

15.     Thirty days after Plaintiff shipped the Software to Defendant, on August 20, 2007, Defendant owed Plaintiff an additional payment of $27,000, the remaining 20% of the license fees, thereby bringing the total of the license fees up to $135,000.

16.     Plaintiff supplied Defendant with invoices for the license fees, dated July 18, 2007 ($108,000) and August 20, 2007 ($27,000), totaling $135,000.  See Exhibit B.

17.     Plaintiff also provided Defendant with invoices regarding customer service and professional services rendered to Defendant, totaling $22,939.54, thereby bringing the total of the license fees and other services up to $157,934.54  See Exhibit C.

18.     On October 11, 2007, Plaintiff sent a letter to Defendant regarding Defendant's non-compliance of the payment terms of the MLSA, setting forth a deadline of October 19, 2007 for full payment on all outstanding invoices to date.   Plaintiff informed Defendant that, if Defendant failed to comply, Plaintiff intended to enforce its rights under the MLSA through appropriate legal proceedings.  See Exhibit D.

19.     Defendant failed to make payment on the outstanding amounts due by October 19, 2007.

675697                                                  3

20.     On October 22, 2007, Plaintiff's corporate counsel sent Charles Vaughn, CEO of Defendant Livid, a letter regarding Defendant's continued non-compliance of the payment terms of the MLSA.  Plaintiff formally demanded payment of all outstanding amounts, as well as late payment charges to date, by no later than October 29, 2007.

21.     Defendant failed to make payment on the outstanding amounts due by October 29, 2007.

22.     On October 31, 2007, Plaintiff's corporate counsel sent another letter to Charles Vaughn regarding Defendant's non-responsiveness to Plaintiff's letters.  Plaintiff expressed its intent to pursue any claims it has against Defendant regarding Defendant's use of Plaintiff's Software without a valid license and of Plaintiff's customer and professional services.  Plaintiff expressed that this letter constituted a final courtesy prior to the commencement of litigation, which Plaintiff intended to pursue if a response was not received by Defendant prior to November 7, 2007.  See Exhibit E.

23.     On November 7, 2007, Charles Vaughn spoke to Dwayne Walker, Corporate Controller of North Plains, after which Vaughn emailed Walker, affirming the outstanding balance and assuring Walker that payment covering the outstanding invoices would be sent by Fed Ex "by the end of the week."  See Exhibit F.

24.     By November 14, 2007, Plaintiff still had not received payment on the outstanding invoices and had left voice messages for Defendant, but received no response. Dwayne Walker emailed Charles Vaughn, indicating this, and expressing that by the end of the day on November 15, 2007, the matter would be turned over to New York legal counsel.  See Exhibit F.

25.     Plaintiff again expressed that it would be willing to hold off on proceeding with legal action until the end of the day on November 15, 2007, if payment was made. <u>See</u> Exhibit F.

26.     Plaintiff did not receive any response from Defendant before the close of business on November 15, 2007.

**FIRST CAUSE OF ACTION**
**FOR BREACH OF CONTRACT**

27.     Plaintiff realleges Paragraphs 1 through 23 above and incorporate them as if set forth fully herein.

28.     Plaintiff and Defendant entered a legally binding contract on July 13, 2007.

29.     By failing to pay consideration in the amount stated in the MLSA for the use of Plaintiff's services and Software, Defendant has breached the contract.

30.     Plaintiff is damaged as a result of this breach.

WHEREFORE, Plaintiff prays for judgment in its favor and against Defendant as follows:

A.     As for Count One, compensatory damages in an amount to be determined by the trier of fact, but in no event less than $157,939.54, plus accrued interest on the outstanding balance as of the date of this Complaint, in the amount of $13,332.46, and continuing to accrue thereafter, as well as collection costs and attorneys fees as per the terms of Section 4.4 of the MLSA. <u>See</u> Exhibit G.

B.     An order directing an accounting to determine all gains, profits, savings, and advantages obtained by Defendant as a result of its wrongful actions.

C.     Awarding Plaintiff court costs and reasonable attorneys fees pursuant to the agreed upon terms of the MLSA.

D.     Granting Plaintiff such other and further relief as the Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.


Dated: New York, New York
         January 16, 2008


                                        Respectfully Submitted,

                                        KAUFMAN BORGEEST & RYAN LLP


                                        By:     Richard Pretti
                                                Jonathan B. Bruno
                                        Attorneys for Plaintiff,
                                        NORTH PLAINS SYSTEMS CORP.
                                        99 Park Avenue, 19th Floor
                                        New York, New York 10016
                                        (212) 980-9600
                                        File No.: 860.173

# EXHIBIT A

# MASTER LICENSE AND SERVICES AGREEMENT

Between

North Plains Systems Corp.

-and-

Livid Media LLC

# MASTER LICENSE AND SERVICES AGREEMENT

This Master License and Services Agreement (the "Agreement") is made as of ～July 13, 2007 (the "Effective Date") by and between North Plains Systems Corp. ("North Plains"), an Ontario corporation, and LIVID MEDIA LLC, a Delaware limited liability company (the "Client").

This Agreement shall be comprised of the Master License and Services Agreement, Schedule A (License Type and License Fees), Schedule B (Maintenance Fees and Terms), Schedule C (Professional Services – Statement of Work) and such other schedules as the parties may agree to from time to time. The schedules to this Agreement are incorporated herein by reference and form part of this Agreement.

In consideration of the mutual promises and covenants herein contained and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto covenant and agree as follows:

## 1. DEFINITIONS

1.1. "Concurrent User(s)" means the specified number of concurrent users entitled to use the Products pursuant to the license granted hereunder, and as detailed in Schedule A.

1.2. "Documentation" means all documentation which facilitates the use of the Software, and any changes, corrections, updates, or enhancements subsequently made to such documentation.

1.3. "Error Correction" means bug fixes to the Products.

1.4. "Force Majeure" means a strike, labour trouble, inability to get materials or services, power failure, restrictive governmental laws or regulations, riots, insurrection, sabotage, rebellion, war, act of God, or any other similar reason, that is not the fault of the party asserting it. Force Majeure does not include inability to obtain funds.

1.5. "License Fees" means the license fees listed on Schedule A.

1.6. "Maintenance Services" means the maintenance and support services to be provided to the Client by North Plains, as set out in Schedule B.

1.7. "Product" or "Products" means the Software and the Documentation collectively.

1.8. "Product Specification" means the specifications set forth in Exhibit A for the Products on the date of this Agreement.

1.9. "Professional Services" means professional services to be provided to the Client by North Plains in connection with the Software, including implementation, consulting, analysis and training, as set out in Schedule C.

80397956.2

1.10. "Server(s)" means the specified number of servers on which the Software is permitted to be installed pursuant to the license granted hereunder, and as detailed in Schedule A.

1.11. "Software" means the computer software listed on Schedule A, in object code form, including all updates and revisions thereto which are supplied by North Plains to the Client during the term of this Agreement, and all copies of the foregoing.

## 2. GRANT OF LICENSE

2.1. Subject to the provisions contained in this Agreement, North Plains hereby grants to the Client, and the Client hereby accepts a non-exclusive, world-wide license to use the Software during the term of this Agreement, and to use the Documentation during the term of this Agreement in support of the use of the Software. The license granted hereunder shall be limited to the number of Concurrent Users set forth in Schedule A. The license granted hereunder shall be temporary until all payments set forth in Schedule A have been received by North Plains. Upon receipt of full payment in accordance with this Agreement, Client shall be issued a permanent serial number key to use the Software.

2.2. The Client is only permitted to install the Software on the Servers specified on Schedule A and may make only one copy of the Products for backup or archival purposes, provided such copy must contain all copyright, trade mark and trade secret notices of North Plains thereon. Any such copy shall become the property of North Plains. Notwithstanding the foregoing, at such time as Client establishes substitute Servers, or acquires replacement Servers, Client shall have the right to install the Software in other Servers and shall erase or delete, to the extent commercially feasible, the copies of the Software on the old Servers within a reasonable time after "cutover" to the other Servers and such temporary concurrent use on substitute Servers shall not constitute a violation of this Agreement nor shall be counted as "Concurrent Users".

## 3. IMPLEMENTATION AND COOPERATION

3.1. The Client shall designate a responsible individual with the authority, competence and responsibility to act as a project manager hereunder. The Client project manager shall be responsible for providing or coordinating the provision of such information about the Client and its operations as North Plains may reasonably require, supervising the conduct of acceptance testing, and coordinating training on the Software following the installation thereof. The Client's project manager shall have the authority on behalf of the Client to notify North Plains that any acceptance tests provided for herein have been successfully passed or, where applicable, that the Client waives compliance with any such acceptance tests.

3.2. The Client agrees during the first year of its use of the Software, that it will acquire Maintenance Services at the service level selected by it, as set out in Schedule A.

3.3. North Plains and the Client shall use their best efforts to carry out their respective obligations under this Agreement.



## 4. PAYMENT

4.1.    Software Licenses. In consideration for the license granted hereunder, the Client agrees to pay North Plains the License Fees set out in Schedule A to this Agreement in accordance with the payment terms set out therein.

4.2.    Maintenance Services. In consideration for the Maintenance Services to be provided hereunder, the Client shall pay North Plains the Maintenance Services fees set out in Schedule B to this Agreement in accordance with the payment terms set out therein.

4.3.    Professional Services. As compensation for performing the Professional Services, the Client agrees to pay North Plains the Professional Services fees set out in Schedule C to this Agreement in accordance with the payment terms set out therein.

4.4.    Unless otherwise set out in a schedule to this Agreement, all fees payable under this Agreement will be due thirty (30) days from the date of the relevant invoice unless contested in good faith. Amounts unpaid for thirty (30) days after due date, unless contested in good faith, shall bear interest from the invoice date of the lesser of: (a) one and one-half percent (11/2%) per month, or (b) the highest rate permitted by law. Time is of the essence for all payments due under this Agreement (unless contested in good faith), and in the event any payment due to North Plains is collected at law, through a lawyer or a collection agency, the Client agrees to pay all costs of collection, including without limitation, all court costs and reasonable lawyer's fees.

4.5.    The fees listed in this Agreement do not include taxes, import duties or export duties which may be imposed in the United States. If North Plains is required to pay any sales or use, taxes levied on the Products Professional Services or Maintenance Services by any state of the United States or a subdivision thereof, and such tax is properly imposed by law on Client (and not imposed by law on North Plains) then such taxes shall be billed to and paid by the Client. Notwithstanding the foregoing, Client shall not be required to pay, and North Plains shall not charge Client for, any excise, value added, import or export tax as may be imposed by the United States of America or any foreign governmental entity (such as Canada) with respect to the importation or exportation of the Products, Professional Services or Maintenance Services, nor shall Client be responsible in any manner for the portion of any tax which is required to be deducted and/or withheld by Client under any applicable law. This section does not apply to taxes based on North Plains' net income or North Plains' employer contributions and taxes, all of which shall be the obligation of North Plains.

4.6.    North Plains reserves the right to withhold Professional Services or Maintenance Services if the Client is delinquent in payment for said services or any amounts authorised hereunder, and to change the Client's credit terms, if North Plains' opinion, the financial condition or previous payment record of the Client so warrants.

4.7.    All payments made hereunder are non-refundable, except as specifically provided otherwise in this Agreement.

4.8.    All amounts referred to herein are in United States of America dollars.



## 5. PROPRIETARY RIGHTS, NOTICES AND OBLIGATIONS

5.1.   The Client acknowledges and agrees that:

a) nothing in this Agreement grants the Client any ownership rights to the Products, or any copy thereof, or any trade marks, copyrights, trade secrets, industrial designs, patents or other intellectual property rights relating thereto; and

b) the only rights which the Client obtains to the Products are the rights to use the Products in accordance with the terms of this Agreement.

5.2.   The Client shall ensure that all copyright, trade mark and trade secret notices of North Plains shall remain on or in the Software and on all Documentation. The Client agrees not to alter, remove or obscure any copyright or other proprietary notices on or in the Software or on the Documentation. The Client shall not attach, remove or disfigure any North Plains marks on or in the Software or on the Documentation, and shall not attach any additional marks to the Products.

## 6. CONFIDENTIAL AND PROPRIETARY INFORMATION

6.1.   Each party recognizes and acknowledges that, during the term of this Agreement, it shall acquire information about certain matters and things which are confidential to the other party and which information is the exclusive property of the other party.

6.2.   Each party covenants and agrees that it shall not, at any time during the term of this Agreement and at any time following the termination of this Agreement, other than as contemplated herein, reveal, divulge or make known to any person or entity (other than to the other party and its duly authorized employees) or make use of, for its own or any other person's benefit, the other party's trade secrets and materials, formulas, research techniques or accomplishments, markets or marketing plans, present and future technical and business information relating to the other party's services or products (including, in the case of North Plains, the configuration, database and schema relating to the Software), research and development, potential business ventures, or their knowledge of any of the other business or financial affairs of the other party, or any other information regarded by the other party as confidential during the term hereof ("Confidential Information") other than as permitted in this Agreement. Confidential Information shall not include information that:

a) is now or subsequently becomes generally available to the public through no fault or breach on the part of the receiving party;

b) the receiving party can demonstrate to have had rightfully in its possession prior to the disclosure to the receiving party by the disclosing party;

c) is independently developed by the receiving party without the use of any Confidential Information;

d) the receiving party rightfully obtains from a third party who has the right to transfer or disclose it; or




e) the receiving party is lawfully required to disclose to any governmental agency or is otherwise required to disclose by law, provided however that before making such disclosure the receiving party shall give the disclosing party notice of such obligation in an timely a manner as is reasonable under the circumstances.

Confidential Information shall remain the exclusive property of the disclosing party.

6.3.    Except as permitted by this Agreement, each party shall maintain in confidence and shall not disclose or use any Confidential Information, without the prior express written consent of the owner thereof, whether or not such Confidential Information is in written or permanent form, except to the extent contemplated herein.

6.4.    Without limiting the generality of the foregoing, the Products shall be accessible only to those employees, consultants or agents of the Client who require access to the Products in order to perform their duties to the Client. Save for the Client's right to make only one copy of the Products for backup or archival purposes, no copies of the Products shall be made by the Client or the Client's employees, consultants or agents.

## 7.    ADDITIONAL RIGHTS AND RESTRICTIONS

7.1.    The Client shall not:

a) under any circumstances, rent, lease, transfer, export or sub-license the Products;

b) reverse engineer, decompile, disassemble or modify the Products, nor attempt to gain knowledge of the source code of the Products in any manner whatsoever; or

c) use the Products except as authorized in this Agreement.

7.2.    The Client agrees to:

a) ensure that persons under the Client's direction and control shall abide by the terms and conditions of this Agreement;

b) prevent third parties from using the Products in any way that would constitute a breach of this Agreement; and

c) immediately report to North Plains any unauthorized use or reproduction of the Products.

7.3.    In order to assist North Plains in the protection of North Plains' proprietary rights with respect to the Products and the Confidential Information, the Client shall permit North Plains to audit the Client's compliance with this Agreement, as North Plains deems reasonably necessary, and shall permit North Plains to inspect the Client's premises at which the Software is used and any premises at which the Software or Documentation is stored. The Client shall advise North Plains on demand of all the premises at which the Products are being used or stored, and shall provide North Plains with access to the Products, including any copies of thereof.



## 8. NO SERVICE BUREAU

8.1. The Client hereby acknowledges and agrees that the rights granted in this Agreement only allow the Client to use the Products for its own internal business purposes. The Client agrees that it will not: (i) use the Products to assist any third party in conducting such third party's business, (ii) use the Products to provide media asset management services to any third party or assist any third party in doing so, and/or (iii) facilitate the actions of any third party seeking to circumvent the payment to North Plains of any license fees for the Products.

## 9. DATABASE CONNECTIVITY LICENSE

9.1. The Client shall not exceed the number of permitted Concurrent Users by connecting to the Software database using any third party software product, other than the Software. In the event that the Client connects to the Software database using a third party software product, a supplementary database connectivity fee will be due to North Plains.

## 10. THIRD PARTY PRODUCTS

10.1. Certain of the Software includes third party software products. The Client agrees that the Client shall use such third party software products only in conjunction with the Client's use of the Products, as permitted under this Agreement. The Client acknowledges that the Client obtains no right, title or interest in or to such third party software products, or to the intellectual property rights associated with such third party products.

## 11. LIMITED WARRANTY

11.1. North Plains represents and warrants that for a period of two years from the date of delivery and installation of the Products by North Plains to Client:

a) The Products are not subject to any restrictions or any mortgages, liens, pledges, charges, security interests, encumbrances or any other kind of impediment which would prevent the grant of the rights specified in this Agreement and North Plains has not entered into any agreements with any third party that may have any effect on the right of North Plains to execute, deliver and perform its obligations, or grant the rights, as specified in this Agreement;

b) The Products do not encroach or infringe any copyrights, trademarks, trade secrets, or other proprietary rights of third parties and that North Plains has not received notice of such encroachment or infringement;

c) Provided that the Software is operated on the Servers specified in Schedule A, and provided the Software is operated in compliance with all operating instructions and specifications for the Software and applicable Servers, the Software shall conform to and perform the functions and operate substantially in accordance with North Plains' published specifications and/or applicable user manual;

d) The Software shall, under normal use, be free from substantial defects in material and workmanship;



11.2.   North Plains shall not be responsible for any defects in the Products that result from the Client's abuse, or improper use of the Products, or for any defects in the Products that result from conduct or conditions outside the control of North Plains. If the Client abuses or improperly uses the Products, the above limited warranty shall be immediately terminated.

11.3.   Except as set forth above, or as set forth in the specifications to the Software or the Products, North Plains excludes any representation or warranty that the operation of the Products shall be uninterrupted, error-free or secure, or that any defects in the Product are correctable or shall be corrected.

11.4.   The Client acknowledges that it is responsible to determine whether the Products sufficiently meet the Client's requirements.

11.5.   The Client agrees that this limited warranty shall be immediately terminated if the Client:

a)   modifies the Products during the limited warranty period referred to in this Agreement;

b)   uses or modifies the Products prior to the final installation of the Products by North Plains;

c)   abuses or improperly uses the Products; or

d)   is in default of any of the terms of this Agreement.

11.6.   The Client and North Plains agree that during the limited warranty period referred to in this Agreement, North Plains may at its sole option:

a)   repair or replace any defective Products; or

b)   refund all or any part of the License Fees paid by the Client to North Plains for any defective Products.

11.7.   North Plains warrants that the Professional Services and Maintenance Services will be performed in accordance with industry standards.

11.8.   THE WARRANTIES EXPRESSLY STATED IN THIS AGREEMENT ARE IN LIEU OF ALL OTHER WARRANTIES OR CONDITIONS EXPRESS OR IMPLIED. WITHOUT LIMITATION, TO THE FULLEST EXTENT ALLOWABLE BY LAW, THIS EXCLUSION OF ALL OTHER WARRANTIES AND CONDITIONS EXTENDS TO IMPLIED WARRANTIES OR CONDITIONS OF SATISFACTORY QUALITY, MERCHANTABLE QUALITY AND FITNESS FOR A PARTICULAR PURPOSE, AND THOSE ARISING BY STATUTE OR OTHERWISE IN LAW, OR FROM A COURSE OF DEALING OR USAGE OF TRADE.

80397956.2



## 12. LIMITATION OF LIABILITY

12.1.    The remedies provided in this Agreement are the sole and exclusive remedies of the parties.

12.2.    EACH OF THE PARTIES AGREES THAT THE LIMITATIONS OF LIABILITY SET OUT IN THIS SECTION ARE FAIR AND REASONABLE IN THE COMMERCIAL CIRCUMSTANCES OF THIS AGREEMENT AND THAT IT WOULD NOT HAVE ENTERED INTO THIS AGREEMENT BUT FOR THE OTHER PARTY'S AGREEMENT TO LIMIT ITS LIABILITY IN THE MANNER, AND TO THE EXTENT, PROVIDED FOR HEREIN. SAVE AND EXCEPT FOR ANY LIABILITY RELATING TO OWNERSHIP OF THE SOFTWARE AND LIMITATIONS ON ITS USE OR INDEMNIFICATION, THE PARTIES AGREE THAT:

   a)   Limitation of Liability. EACH OF THE PARTIES' LIABILITY TO THE OTHER FOR ANY AND ALL DIRECT, COMPENSATORY LOSS OR DAMAGES, UNDER ANY THEORY OF LAW OR EQUITY, WHETHER FOR BREACH OF CONTRACT, TORT OR OTHERWISE, ARISING OUT OF OR IN ANY WAY RELATED TO THIS AGREEMENT OR THE INTENDED FULFILLMENT OF ANY OF ITS OBLIGATIONS UNDER THIS AGREEMENT, SHALL BE STRICTLY LIMITED IN THE AGGREGATE TO THE AMOUNT OF FEES PAID BY CLIENT TO NORTH PLAINS PURSUANT TO THE SPECIFIC SCHEDULE UNDER WHICH THE DAMAGES AROSE EXCEPT IN THE CASE OF GROSS NEGLIGENCE, FRAUD OR VIOLATION OF THE CONFIDENTIALITY PROVISIONS OF THIS AGREEMENT;

   b)   Punitive Damages. EXCEPT IN THE CASE OF GROSS NEGLIGENCE, FRAUD OR VIOLATION OF THE CONFIDENTIALITY PROVISIONS OF THIS AGREEMENT, NEITHER PARTY SHALL SEEK, APPLY FOR OR OTHERWISE CLAIM ANY EXEMPLARY, AGGRAVATED OR PUNITIVE DAMAGES WHATSOEVER, OR HOWSOEVER INCURRED, IN CONNECTION WITH THIS AGREEMENT OR ITS SUBJECT MATTER;

   c)   Exclusion of Indirect Damages, etc. UNDER NO CIRCUMSTANCES WILL EITHER PARTY BE LIABLE TO THE OTHER FOR ANY INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES, COMPENSATION OR LOSS OF PROFITS, ANTICIPATED REVENUE, SAVINGS OR GOODWILL, OTHER ECONOMIC LOSS OF THE OTHER PARTY OR ANY COSTS, EXPENSES OR INTEREST RELATED THERETO, UNDER ANY THEORY OF LAW OR EQUITY, ARISING OUT OF OR IN ANY WAY RELATED TO THIS AGREEMENT, EVEN IF ADVISED OF THE POSSIBILITY THEREOF EXCEPT IN THE CASE OF GROSS NEGLIGENCE, FRAUD OR VIOLATION OF THE CONFIDENTIALITY PROVISIONS OF THIS AGREEMENT; AND

   d)   Fundamental or Essential Breach. THIS SECTION SHALL APPLY EVEN IN THE EVENT OF A BREACH OF CONDITION, A BREACH OF AN ESSENTIAL OR FUNDAMENTAL TERM, OR AN ESSENTIAL OR FUNDAMENTAL BREACH OF THIS AGREEMENT.



12.3.   ANY ACTION BY EITHER PARTY MUST BE INITIATED WITHIN TWO (2) YEARS AFTER THE CAUSE OF ACTION ARISES.

## 13. INDEMNITIES

13.1.   North Plains, at its sole expense, agrees to defend, indemnify and hold the Client harmless against any claim that the Products infringe a Canadian or US copyright, patent, or other intellectual property right, provided that:

a)  the Client notifies North Plains in writing within thirty (30) days of the receipt of written notice of the claim;

b)  North Plains has sole control of the defense and all related settlement negotiations; and

c)  the Client provides North Plains with the information, assistance and authority to enable North Plains to perform North Plains' obligations under this section.

However, North Plains shall have no liability for any claims of infringement to the extent that such claims result from the use of the Products in conjunction with non-North Plains software or other non-North Plains products or upon a use of the Products in a manner not contemplated by the Product specifications. Nothing in this provision shall be construed as a limitation on the Client's ability to retain legal counsel at its own expense to monitor the proceedings.

North Plains further agrees that if the Client is prevented from using the Products due to an actual or claimed infringement of any Canadian or US copyright, patent or other intellectual property right, then at North Plains' option and as its entire obligation to the Client with respect to such claims, North Plains shall promptly either:

a)  procure for the Client, at North Plains' expense, the right to continue to use the Products;

b)  replace or modify the Products at North Plains' expense so that the Products become non-infringing, but substantially equivalent in functionality; or

c)  in the event that neither (a) or (b) are reasonably feasible, terminate this Agreement as to the infringing Products and return the Client's License Fees for the infringing Product(s), subject to Section 12.2.

13.2.   The Client agrees to indemnify and hold North Plains harmless against any and all losses, liabilities, awards and costs (including legal fees and expenses) arising out of or related to any third-party claim, other than actions arising out of section 13.1 relating to infringement, which result from the Client's unauthorized use of the Products.

## 14. EMPLOYEE RECRUITING

14.1.   The Client shall not, while North Plains is performing Professional Services for the Client and for one (1) year thereafter, without the prior written consent of North Plains, induce, solicit,

80397956.2



or attempt to induce or solicit any employee, consultant or independent contractor of North Plains to leave North Plains' employment or engagement, as the case may be. It is acknowledged by the Client that in view of the highly sensitive nature of the intellectual property rights of North Plains that this restriction is reasonable.

## 15. TERM

15.1.   This Agreement shall commence on the Effective Date, and shall continue in effect until the earlier of the Client destroys the Products and any copies thereof or the termination of this Agreement, provided that the termination of this Agreement shall not nullify either party's rights to initiate an action hereunder provided that it is within the two year period from the date of the cause of action as provided for in Section 12.3.

## 16. TERMINATION

16.1.   If either party materially breaches this Agreement, the other party may give written notice of its desire to terminate and the specific grounds for termination and, if such default is capable of cure and the party in default fails to cure the default within thirty (30) days of the notice, the other party may terminate this Agreement. If such default is incapable of cure, the other party may terminate this Agreement immediately upon written notice of its desire to terminate. Upon termination, the license to use the Products shall be immediately revoked and all Products and Confidential Information of North Plains shall be returned to North Plains or destroyed and documentation shall be supplied to North Plains certifying said destruction. Upon termination of this Agreement, all outstanding payment obligations shall become immediately due. Confidentiality obligations shall survive this Agreement.

## 17. US GOVERNMENT PROCUREMENT

17.1.   No United States of America government procurement regulations or United States of America federal acquisition regulations shall be included in this Agreement or be binding on either party, unless specifically agreed to in writing by the parties.

## 18. UN CONVENTION

18.1.   The rights and obligations under this Agreement shall not be governed by the United Nations Convention on Contracts for the International Sale of Goods and/or any local implementing legislation, the application of which is hereby expressly excluded.

## 19. NOTICES

19.1.   Any notice, instruction, demand or document that is permitted or required to be given, delivered or sent under this Agreement or by law shall be deemed to have been validly given, delivered or sent if delivered personally or if given by fax where the intended recipient is equipped to receive such telecommunication or if sent by prepaid courier or registered mail to the intended recipient at the address set out below.

(a)   ' If sent by North Plains to the Client:
          Livid Media, LLC



One Glenlake Parkway, Suite 700
Atlanta, GA 30328
Attention: Charles Vaughn

With a courtesy copy to:
Manatt, Phelps & Phillips, LLP
7 Times Square
New York, NY 10036
Attention: Aydin S. Caginalp

(b)    If sent by the Client to North Plains:
North Plains Systems Corp.
510 Front St. W, 4th Floor
Toronto, ON, M5V 3H3, Canada
Attention: Hassan Kotob

With a courtesy copy to:
Minden Gross LLP
145 King Street West, Suite 2200
Toronto, ON M5H 4G2, Canada
Attention: Brian J. Temins

19.2.    Either party may change its address for service under this Agreement by giving notice to the other party in accordance with the provisions herein.

## 20. MISCELLANEOUS

20.1.    This Agreement constitutes the entire agreement between the parties concerning its subject matter and replaces all prior correspondence, negotiations and understandings between the parties with respect to that subject matter, and the parties confirm that there are no side or collateral agreements, understandings, courses of dealing or trade usages that modify, vary, explain or supplement this Agreement. All amendments to this Agreement shall be in writing and shall by signed by both parties, provided that any such agreement may be executed in counterpart form. This Agreement shall be governed by and construed under the laws of the State of New York and the United States without regard to its conflicts of laws provisions thereof. Any action, litigation or suit (collectively, a "Proceeding") arising out of or relating to this agreement shall be brought in the courts of the State and County of New York, or, if it has or can acquire jurisdiction, in the United States District Court for the Southern District of New York, and each of the parties irrevocably submits to the exclusive jurisdiction of each such court in any such Proceeding, waives any objection it may now or hereafter have to venue or to convenience of forum, agrees that all claims in respect of the Proceeding shall be heard and determined only in any such court and agrees not to bring any Proceeding arising out of or relating to this agreement or any Services in any other court. The parties agree that either or both of them may file a copy of this Section with any court as written evidence of the knowing, voluntary and bargained agreement between the parties irrevocably to waive any objections to venue or to convenience of forum. Process in any Proceeding referred to in the first sentence of this section may be served on any party anywhere in the world. This agreement shall be governed by and construed under




the laws of the State of New York without regard to conflicts of law principles that would require the application of any other law. In any action or proceeding to enforce rights under this Agreement, the prevailing party will be entitled to recover reasonable costs and attorneys' fees.

20.2.

20.3.   Despite anything to the contrary, if North Plains or the Client is in good faith, prevented from doing anything required by this Agreement because of Force Majeure, the doing of the thing is excused for the period of the Force Majeure and the party prevented shall do what was prevented within the required period after the Force Majeure, but this does not excuse the Client from payment of amount it is required to pay at the times specified in this Agreement.

20.4.   Neither party may assign this Agreement or any right or obligation arising under this Agreement without the prior written consent of the other, except as part of a merger or acquisition or sale of all or substantially all of the assets of the assigning party provided the surviving or acquiring entity agrees in writing to be bound by this Agreement in which case this Agreement may be assigned without prior consent or approval. Subject to the foregoing, this Agreement shall be binding upon and enure to the benefit of each party and its respective successors and permitted assigns.

20.5.   Any term or condition of this Agreement, which by its nature is intended to survive termination of this Agreement, shall survive such termination.

20.6.   This Agreement may be executed in counterpart form, and where a party executes such a counterpart, that counterpart shall be held in escrow pending the execution of similar counterparts by all other parties to this Agreement.

20.7.   If any provision of this Agreement is determined to be invalid or unenforceable in whole or in part, such invalidity or unenforceability shall attach only to such provision or part thereof and the remaining part of such provisions and all other provisions hereof shall, to the extent reasonably possible, continue in force and effect.

20.8.   The Parties agree to do or cause to be done all actions reasonably deemed it necessary or desirable to implement and carry into effect this Agreement to its full extent. Without limiting the foregoing, each Party hereto will at any time and from time to time execute and deliver or cause to be executed and delivered such further instruments and take such further actions as may be reasonably requested by the other Party, in order to cure any defect in execution and/or delivery of this Agreement.

20.9.   Save as otherwise expressly set out herein, no waiver of any provision of this Agreement shall be binding unless it is in writing. No indulgence or forbearance by a Party shall constitute a waiver of such Party's right to insist on performance in full and in a timely manner of all covenants in this Agreement. Waiver of any provision shall not be deemed to waive the same provision thereafter, or any provision of this Agreement at any time.

**IN WITNESS THEREOF** the parties hereto have caused this Agreement to be duly executed and signed in their names by the proper officials thereof who are duly authorized, as of the Effective Date.





**NORTH PLAINS SYSTEMS CORP.**

Per: _____
Name: Julius da Cole
Title: VP Sales & Services


• Livid Media, LLC

Per: _____
Name: Charles Vaughn
Title: President

80397956.2

Schedule A

### License Type, Fees and Payment Terms

## 1.     LICENSED SOFTWARE

TSL            **TeleScope MDP Base Server License**

*MDP digital asset management solution.*
*Includes: License for one DBMS, TeleScope.web*
*Application Server, TeleScope Administrator Application, File*
*Broker, TeleScope Hub.*

CU             *Content Editors (Concurrent User)*

*Concurrent client license connections to TeleScope through any*
*interface including native Windows, Mac OS or the TeleScope.web*
*client. Required for native client connections. Client required to*
*purchase OpenLink ODBC application to enable native Mac OS*
*DBMS connectivity.*

CC-CPU         *Content Consumers (CPU Based Web Access)*

*CPU based connection license model to TeleScope. Allows an*
*unlimited number of connections through the TeleScope.web client*
*interface only. Connection capacity is limited only by the number of*
*CPU's on the TeleScope.web Application Server. (Benchmark test*

IP-MDT-BDL     *Metadata Bundle*

VID-MGR-MDL    **Video Manager**

*The Video Manager module greatly enhances TeleScope in the*
*areas of video ingestion through connectivity to Virage VideoLogger,*
*review and annotation, clip creation and promotion, rough cut play*
*back of playlist, and ability to export EDL's for either Avid or*
*FinalCutPro.The Video Manager also includes a Flip Factory*
*Conversion I-Piece that enables video file conversions upon*
*download. (Does not include any of the 3rd party products listed in this*
*description.)*

## 2.     NUMBER OF CONCURRENT USERS / LIMITATIONS

| | | |
|---|---|---|
| TSL | **TeleScope MDP Base Server License** | 1 |
| CU | *Content Editors (Concurrent User)* | 5 |
| CC-CPU | *Content Consumers (CPU Based Web Access)* | 1 |
| IP-MDT-BDL | *Metadata Bundle* | 1 |

80397956.2



VID-MGR-MDL    Video Manager                                                  1

## 3.    LICENSE FEES

| Part No. | Description | Quantity | Livid Media Extended Price |
|----------|-------------|----------|---------------------------|
| TSL | TeleScope MDP Base Server License | 1 | |
| CU | Content Editors (Concurrent User) | 5 | |
| CC-CPU | Content Consumers (CPU Based Web Access) | 1 | |
| IP-MDT-BDL | Metadata Bundle | 1 | |
| VID-MGR-MDL | Video Manager | 1 | |

TOTAL SOFTWARE COST                                          $135,000

## 4.    PAYMENT TERMS

The License Fees shall be payable in three (3) installments, forty percent (40%) being due upon the execution of this Agreement, forty percent (40%) being due on the date of shipment of the Software by North Plains to the Client, and the remaining twenty percent (20%) being due thirty (30) days from the date of shipment of the Software by North Plains.

**NORTH PLAINS SYSTEMS CORP.**

Per:    _____
Name: Julius da Costa
Title: VP Sales & Service

● **LIVID MEDIA LLC**

Per:    _____
Name: Charles Vaughn
Title: President

## Schedule B

### Maintenance Fees and Terms

1.     **TERM**

1.1 North Plains agrees to provide the maintenance and support services set forth herein (the "Maintenance Services") for a term commencing upon installation of the Software, and expiring, subject to a renewal as set out below, on the 31st day of December in the year which corresponds to the year in which the Professional Services set out in Schedule C are completed (the "First Service Period").

2.     **RENEWAL**

2.1 North Plains and the Client agree that the terms and conditions of this Schedule B shall automatically be renewed for additional twelve (12) month periods (each additional twelve (12) month period shall hereinafter be referred to as the "Renewal Period"), commencing on the expiry of the First Service Period, or Renewal Period, unless either of the parties gives the other party not less than sixty (60) days written notice of its intention to cancel this Schedule B.

3.     **FEES AND PAYMENT TERMS**

3.1 Client has chosen *Silver Service Levels*, the fees for which are *20%* of the then-current List Price for the Products set out in any Schedule As, on an annual basis, initially equal to $30,000 per annum. First Year Maintenance and support is waived.

3.2 Fees for Maintenance Services in respect of the First Service Period is waived upon execution of this Agreement. Fees for Maintenance Services in respect of Renewal Periods shall be paid thirty (30) days in advance of the commencement of the applicable Renewal Period. All fees for the Maintenance Services are calculated on a per annum basis.

4.     **MAINTENANCE SERVICES**

4.1 North Plains' Maintenance Services are described in the Maintenance Services Exhibit to this Schedule B.

80397956.2

# MAINTENANCE SERVICES EXHIBIT

**A    Scope of Maintenance Services**

North Plains' Maintenance Services include the following, as set out in further detail below:

- Software Update Services
- Support Services
- Software Repair Services

Support Services cover the current version of the Software and one version back. Software Update Services and Software Repair Services cover the current version and Severity 1 repair issues for one version back. The Client receives non-chargeable releases of new versions as part of Software Update Services.

**B    Software Update Services**

The following Software Update Services are provided to the Client:

- Corrections for problems that are diagnosed as defects in a currently supported version of the Software
- All product enhancements that are incorporated into the product and are part of a standard release that are not separately priced or marketed
- Any new releases of the standard software, which are released to the general client base that are not separately priced or marketed
- Any improvements required to support new versions of Operating Systems and/or Web Browsers providing these such improvements are feasible
- Updated documentation as appropriate (i.e. User Manuals)

**C    Support Services**

North Plains will use commercially reasonable efforts to provide the Client with the following level of support services for the Software provided during the period agreed upon.

- Designated Technical Support Contact
- Service Request by telephone, Web site, or e-mail



Service Levels

| Services | Silver | Gold | Platinum |
|---|---|---|---|
| Hours of Phone Support | 8:30AM to 5:30PM Eastern Time | 8:00AM to 8:00PM Eastern Time | 24 Hours per day |
| Days of Phone Support | Monday to Friday | Monday to Friday | Sunday to Sunday |
| Support Days Exclusions | Canadian National Holidays | Canadian National Holidays | December 25th |
| Number of registered client contacts | 3 | 3 | 3 |
| Maximum Response Time | 24 hours | 8 hours | 4 hours |
| Support for NPS developed customizations | None | Yes | Yes |
| Free diagnosis and specification writing for customizations changes caused by a Software Upgrade | None | None | Yes, actual development not included. |
| Bug Fixes/Maintenance on Customizations | No | No | No |
| Onsite support for Severity 1 issues | None | None | Yes, Client pays travel and expenses. |
| CTO Council Member | None | None | 1 Seat |

D    **Software Repair Service**

North Plains will use reasonable efforts to remotely repair any reported issues where the Software is deemed to not operate in conformance with the product specification.




**Priority and Resolution Levels**

| Priority | Condition | Resolution |
|---|---|---|
| *Urgent Impact (Severity 1)* | • Complete loss of a core organizational or business process where production work cannot continue and, <br>• Complete inability to use the product as defined by the Documentation in a production environment, and <br>• There is no alternative work around. | In response to a Severity I Error, North Plains shall use Reasonable Commercial Efforts (as defined below) to promptly provide a software patch or bypass or other work-around for such error ("Work-Around") or to correct such error. Solely for purposes of the foregoing sentence, "Reasonable Commercial Efforts" includes, but is not limited to North Plains promptly initiating as many of the following procedures as is reasonable to provide a Work-Around or correction: (1) assigning at least one (1) qualified employee or consultant of North Plains to correct or find a Work-Around for the error; (2) providing the Client with periodic reports on the status of any Work-Around or corrections; (3) commencing work to provide the Client with a Work-Around or correction until the Software is useable; and (4) providing a solution to the Client as soon as it is reasonably available. North Plains' target goal shall be to provide a Work-Around within five (5) business days after receiving notice of such error. North Plains agrees that in the event a Priority I Error renders Client unable to access its digital assets, North Plains will within twenty-four (24) hours assist Client in accessing said assets and render Client able to access its assets, subject to circumstances beyond North Plains' reasonable control. |



| | | |
|---|---|---|
| *High Impact* (Severity 2) | • An error that has material impact on the client's ability to use the software.<br>• Frequent or reproducible crashes<br>• Major functionality not working as defined by the Documentation. | North Plains shall use reasonable commercial efforts to provide in a timely manner, a Work-Around or correction for such error and to include the program fix for such error in the next Software Update. North Plains' target goal shall be to provide a Work-Around within ninety (90) business days after receiving notice of such error. |
| *Medium Impact* (Severity 3) | • Functionality is not working as expected, there is a work around. This problem is not detrimental to the day-to-day workflow.<br>• Issues that affect an isolated piece of functionality that is not critically required<br>• Issues that have acceptable work-around | North Plains shall use reasonable commercial efforts to include the program fix or Work-around for such error in the next Software Update. |
| *Low Impact* (Severity 4) | • Any other error that is not covered in the above severity levels.<br>• General inquiries on the use of North Plains Software<br>• Minor errors in layout and formatting<br>• Extreme boundary conditions that are unlikely in normal use. | North Plains shall use reasonable commercial efforts to include the program fix or Work-around for such error in the next Software Update. |
| *Feature Request* | • Functionality is not working as desired there may or may not be a workaround. | Features are implemented into the product at the discretion of NPS. NPS policy when developing a major release is to review all Feature Requests. Requests are then added to the Software at the discretion of NPS. |

E    **System Access**

• Client must give North Plains internet accessible access to the machines in which North Plains software is installed and to any other machines that the Software is connecting to (i.e. database server).



**F      Exclusions**

- Operating systems, including network operating systems and other third party software, and database management, or request related to the compatibility of all third party devices with the Software.
- The integration of any third party application with the Software
- Improper use of the Software
- Repairs, maintenance, modifications, or relocation and reinstallation made by the Client other than with North Plain's supervision or approval
- Failure by the Client to maintain the physical environment parameters specified by the hardware manufacturers
- Requests for assistance with hardware or networking related problems

**G      Client Obligations**

The Client shall facilitate the provision of the Maintenance Services and agrees:

- to designate a minimum of one (1) of the Client's trained individuals within the Client's organization, as the primary support contact individual, who shall be the individual through which all communication to and from North Plains shall be channeled, unless otherwise agreed to by North Plains
- to prepare and maintain a physical environment (including without limitation electrical, temperature, humidity) in conformance with all applicable hardware manufacturers' specifications
- to maintain a procedure external to the products for reconstruction of lost or altered files, data, or programs to the extent deemed necessary by the Client, and for actually reconstructing any lost or altered files, data, or programs. The Client is responsible for the security of its confidential, proprietary, and classified information.





Schedule C

**Professional Services – Statement of Work**

*[SOW to be attached]*

80397956.2

# EXHIBIT B

Page: 1



# north plains ™
## s y s t e m s

510 Front Street West, 4th Floor, Toronto, Ontario M5V 3H3 Canada
Phone: 416-345-1900 Fax: 416-599-0808 E-mail: info@northplains.com

## INVOICE
### 5784

**CUSTOMER NO.**
599

| SOLD TO | SHIP TO |
|---|---|
| Livid Media LLC | Livid Media LLC |
| Ernest Quarles | Ernest Quarles |
| One Glenlake Parkway, | One Glenlake Parkway, |
| Suite 700 | Suite 700 |
| Atlanta, GA   30328 | Atlanta, GA   30328 |

| INVOICE DATE | SHIP VIA | Purchase Order Number | PAYMENT TERMS |
|---|---|---|---|
| 07/18/07 | | | On Receipt of Invoice |

| OUR REFERENCE NUMBER | ORDER DATE | SALESPERSON | OUR ORDER NUMBER |
|---|---|---|---|
| ON 1790 | | House Account | |

| QTY ORDERED | QTY SHIPPED | QTY B.O | ITEM NUMBER | DESCRIPTION | UNIT PRICE | DISC.% | EXTENDED PRICE |
|---|---|---|---|---|---|---|---|
| 1.0000 | 1.0000 | | TSL- US | Licensed Software Includes: | 108,000.00 | | 108,000.00 |
| | | | | 1 - TSL - TeleScope  MDP Base Server License | | | |
| | | | | 5 - CU - Content Editors (Concurrent User) | | | |
| | | | | 1 - CC- CPU - Content Consumers (CPU Based Web Access) | | | |
| | | | | 1 - IP - MDT - BDL - Metadata Bundle | | | |
| | | | | 1 - VID - MGR - MDL - Video Manager | | | |
| | | | | Terms: | | | |
| | | | | 40%  Due Upon Execution - $135,000*40% = $54,000 | | | |
| | | | | 40% Due On Date  Of Shipment Of Software. $135,000*40% = $54,000 | | | |

All amounts stated in U.S. dollars

| | Subtotal | 108,000.00 |
|---|---|---|

**W I R E   I N S T R U C T I O N S**
Bank: Royal Bank Of Canada
Institution Number: 003
Transit Number:  06702
Account Number: 402-199-4
Swift Code: ROYCCAT2
Beneficiary: North Plains Systems Corp

| Taxable | 0.00 |
|---|---|
| Non-Taxable | 108,000.00 |

| Total | 108,000.00 |
|---|---|
| | 0.00 |
| | 108,000.00 |

Page: 1



510 Front Street West, 4th Floor, Toronto, Ontario M5V 3H3 Canada
Phone: 416-345-1900 Fax: 416-599-0808 E-mail: info@northplains.com

## INVOICE
### 5815

| CUSTOMER NO. |
|---|
| 599 |

| SOLD TO: | SHIP TO: |
|---|---|
| Livid Media LLC | Livid Media LLC |
| Earnest Quarles | Earnest Quarles |
| One Glenlake Parkway, | One Glenlake Parkway, |
| Suite 700 | Suite 700 |
| Atlanta, GA   30328 | Atlanta, GA   30328 |

| INVOICE DATE | SHIP VIA | Purchase Order Number | PAYMENT TERMS |
|---|---|---|---|
| 08/20/07 | | | On Receipt of Invoice |

| OUR REFERENCE NUMBER | ORDER DATE | SALESPERSON | OUR ORDER NUMBER |
|---|---|---|---|
| ON - 1790 | | House Account | |

| QTY ORDERED | QTY SHIPPED | QTY B/O | ITEM NUMBER | DESCRIPTION | UNIT PRICE | DISC % | EXTENDED PRICE |
|---|---|---|---|---|---|---|---|
| 1.0000 | 1.0000 | | CU-DEP | Licensed Software Includes: | 27,000.00 | | 27,000.00 |
| | | | | 1- TSL - TeleScope MDP Base Server License | | | |
| | | | | 5 - CU - Content Editors (Concurrent User) | | | |
| | | | | 1 - CC - CPU - Content Consumers (CPU Based Web Access) | | | |
| | | | | 1 - IP - MDT - BDL - Metadata Bundle | | | |
| | | | | 1 - VID - MGR - MDL - Video Manager | | | |
| | | | | Terms: 20% due 30 days from date of shipment $135,000*20% = $27,000 | | | |

All amounts stated in U.S. dollars

| | | Subtotal | 27,000.00 |
|---|---|---|---|

WIRE INSTRUCTIONS
Bank: Royal Bank Of Canada
Institution Number: 003
Transit Number: 06702
Account Number: 402-199-4
Swift Code: ROYCCAT2
Beneficiary: North Plains Systems Corp

| | | |
|---|---|---|
| Taxable | 0.00 | |
| Non-Taxable | 27,000.00 | |
| **Total** | | 27,000.00 |
| | | 0.00 |
| | | 27,000.00 |

# EXHIBIT C

Page: 1



# north plains™
## s y s t e m s

510 Front Street West, 4th Floor, Toronto, Ontario M5V 3H3 Canada
Phone: 416-345-1900 Fax: 416-599-0808 E-mail: info@northplains.com

### INVOICE
### 5785

**CUSTOMER NO**
599

| SOLD TO | SHIP TO |
|---|---|
| Livid Media LLC | Livid Media LLC |
| Ernest Quarles | Ernest Quarles |
| One Glenlake Parkway, | One Glenlake Parkway, |
| Suite 700 | Suite 700 |
| Atlanta, GA    30328 | Atlanta, GA    30328 |

| INVOICE DATE | SHIP VIA | Purchase Order Number | PAYMENT TERMS |
|---|---|---|---|
| 07/18/07 | | | On Receipt of Invoice |

| OUR REFERENCE NUMBER | ORDER DATE | SALESPERSON | OUR ORDER NUMBER |
|---|---|---|---|
| ON - 1790 | | House Account | |

| QTY ORDERED | QTY SHIPPED | QTY B.O. | ITEM NUMBER | DESCRIPTION | UNIT PRICE | DISC % | EXTENDED PRICE |
|---|---|---|---|---|---|---|---|
| 1.0000 | 1.0000 | | CU-SERV | Deposit of 25% On Signing As Per Agreement (25% of $24,800 = $6,200) | 6,200.00 | | 6,200.00 |

| | Subtotal | 6,200.00 |
|---|---|---|

All amounts stated in U.S. dollars

**WIRE INSTRUCTIONS**
Bank: Royal Bank Of Canada
Institution Number: 003
Transit Number:  06702
Account Number:  402-199-4
Swift Code: ROYCCAT2
Beneficiary: North Plains Systems Corp

| | | |
|---|---|---|
| Taxable | 0.00 | |
| Non-Taxable | 6,200.00 | |
| **Total** | | 6,200.00 |
| | | 0.00 |
| | | 6,200.00 |

Page: 1



**north plains™**
**s y s t e m s**

510 Front Street West, 4th Floor, Toronto, Ontario M5V 3H3 Canada
Phone: 416-345-1900 Fax: 416-599-0808 E-mail: info@northplains.com

| INVOICE |
|---|
| 5823 |
| CUSTOMER NO |
| 599 |

| SOLD TO | SHIP TO |
|---|---|
| Livid Media LLC | Livid Media LLC |
| Ernest Quarles | Ernest Quarles |
| One Glenlake Parkway, | One Glenlake Parkway, |
| Suite  700 | Suite  700 |
| Atlanta, GA    30328 | Atlanta, GA    30328 |

| INVOICE DATE | SHIP VIA | Purchase Order Number | PAYMENT TERMS |
|---|---|---|---|
| 08/27/07 | | | Net 30 Days |

| OUR REFERENCE NUMBER | ORDER DATE | SALESPERSON | OUR ORDER NUMBER |
|---|---|---|---|
| ON - 1790 | | House Account | |

| QTY ORDERED | QTY SHIPPED | QTY B O | ITEM NUMBER | DESCRIPTION | UNIT PRICE | DISC % | EXTENDED PRICE |
|---|---|---|---|---|---|---|---|
| 6.0000 | 6.0000 | | CU-SERV | Professional Services - S. Ferdinand Period: August 13 to 24, 2007 | 200.00 | | 1,200.00 |
| 42.0000 | 42.0000 | | CU-SERV | Professional Services - M. Abubaker Period: August 20 to 24,2007 Project: TeleScope QuickBuild Project | 200.00 | | 8,400.00 |

All amounts stated in U.S. dollars

Subtotal        9,600.00

W I R E   I N S T R U C T I O N S                     Taxable              0.00
Bank: Royal Bank Of Canada                            Non-Taxable      9,600.00
Institution Number: 003
Transit Number: 06702                                 | Total | 9,600.00 |
Account Number: 402-199-4                                                   0.00
Swift Code: ROYCCAT2                                                    9,600.00
Beneficiary: North Plains Systems Corp

Page: 1



510 Front Street West, 4th Floor, Toronto, Ontario M5V 3H3 Canada
Phone: 416-345-1900 Fax: 416-599-0808 E-mail: info@northplains.com

| **INVOICE** |
| 5845 |
| CUSTOMER NO. |
| 599 |

| SOLD TO | SHIP TO |
|---|---|
| Livid Media LLC | Livid Media LLC |
| Ernest Quarles | Ernest Quarles |
| One Glenlake Parkway, | One Glenlake Parkway, |
| Suite 700 | Suite 700 |
| Atlanta, GA     30328 | Atlanta, GA     30328 |

| INVOICE DATE | SHIP VIA | Purchase Order Number | PAYMENT TERMS |
|---|---|---|---|
| 09/10/07 | | | Net 30 Days |

| OUR REFERENCE NUMBER | ORDER DATE | SALESPERSON | OUR ORDER NUMBER |
|---|---|---|---|
| ON - 1790 | | House Account | |

| QTY ORDERED | QTY SHIPPED | QTY B.O. | ITEM NUMBER | DESCRIPTION | UNIT PRICE | DISC % | EXTENDED PRICE |
|---|---|---|---|---|---|---|---|
| 10.0000 | 10.0000 | | CU-SERV | Professional Services - M. Abubaker Period: August 27 to 31, 2007 | 200.00 | | 2,000.00 |
| 2.0000 | 2.0000 | | CU-SERV | Professional Services - S. Ferdinand Period: August 29 to 31, 2007 | 200.00 | | 400.00 |
| | | | | Project: TeleScope QuickBuild | | | |

All amounts stated in U.S. dollars

| | | |
|---|---|---|
| | Subtotal | 2,400.00 |
| Taxable | 0.00 | |
| Non-Taxable | 2,400.00 | |
| | **Total** | 2,400.00 |
| | | 0.00 |
| | | 2,400.00 |

WIRE INSTRUCTIONS
Bank: Royal Bank Of Canada
Institution Number: 003
Transit Number: 06702
Account Number: 402-199-4
Swift Code: ROYCCAT2
Beneficiary: North Plains Systems Corp

Page: 1



**INVOICE**

5848

CUSTOMER NO.

599

510 Front Street West, 4th Floor, Toronto, Ontario M5V 3H3 Canada
Phone: 416-345-1900 Fax: 416-599-0808 E-mail: info@northplains.com

| SOLD TO | SHIP TO |
|---|---|
| Livid Media LLC | Livid Media LLC |
| Ernest Quarles | Ernest Quarles |
| One Glenlake Parkway, | One Glenlake Parkway, |
| Suite 700 | Suite 700 |
| Atlanta, GA 30328 | Atlanta, GA 30328 |

| INVOICE DATE | SHIP VIA | Purchase Order Number | PAYMENT TERMS |
|---|---|---|---|
| 09/13/07 | | | On Receipt of Invoice |

| OUR REFERENCE NUMBER | ORDER DATE | SALESPERSON | OUR ORDER NUMBER |
|---|---|---|---|
| EXPENSES - ON 1790 | | House Account | |

| QTY. ORDERED | QTY. SHIPPED | QTY. B/O | ITEM NUMBER | DESCRIPTION | UNIT PRICE | DISC % | EXTENDED PRICE |
|---|---|---|---|---|---|---|---|
| 1.0000 | 1.0000 | | TX-REBILL | Expenses - M. Abubaker Period: August 20 to 24, 2007 Project: TeleScope Quick Build (For details refer to attachments) | 2,339.54 | | 2,339.54 |

All amounts stated in U.S. dollars

| | Subtotal | 2,339.54 |
|---|---|---|

W I R E   I N S T R U C T I O N S
Bank: Royal Bank Of Canada
Institution Number: 003
Transit Number: 06702
Account Number: 402-199-4
Swift Code: ROYCCAT2
Beneficiary: North Plains Systems Corp

| | |
|---|---|
| Taxable | 0.00 |
| Non-Taxable | 2,339.54 |

| Total | 2,339.54 |
|---|---|
| | 0.00 |
| | 2,339.54 |

Page: 1



510 Front Street West, 4th Floor, Toronto, Ontario M5V 3H3 Canada
Phone: 416-345-1900 Fax: 416-599-0808 E-mail: info@northplains.com

## INVOICE
### 5867

| CUSTOMER NO. |
|---|
| 599 |

| SOLD TO | SHIP TO |
|---|---|
| Livid Media LLC | Livid Media LLC |
| Ernest Quarles | Ernest Quarles |
| One Glenlake Parkway, | One Glenlake Parkway, |
| Suite 700 | Suite 700 |
| Atlanta, GA    30328 | Atlanta, GA    30328 |

| INVOICE DATE | SHIP VIA | Purchase Order Number | PAYMENT TERMS |
|---|---|---|---|
| 09/28/07 | | | Net 30 Days |

| OUR REFERENCE NUMBER | ORDER DATE | SALESPERSON | OUR ORDER NUMBER |
|---|---|---|---|
| ON - 1790 | | House Account | |

| QTY ORDERED | QTY SHIPPED | QTY B/O | ITEM NUMBER | DESCRIPTION | UNIT PRICE | DISC % | EXTENDED PRICE |
|---|---|---|---|---|---|---|---|
| 4.0000 | 4.0000 | | CU-SERV | Professional Services - S. Ferdinand Period: September 10 to 14, 2007 | 200.00 | | 800.00 |
| 8.0000 | 8.0000 | | CU-SERV | Professional Services - M. Abubaker Period: September 13 & 14, 2007 | 200.00 | | 1,600.00 |
| | | | | Project: Telescope QuikBuild | | | |

All amounts stated in U.S. dollars

| | | |
|---|---|---|
| | Subtotal | 2,400.00 |

W I R E  I N S T R U C T I O N S
Bank: Royal Bank Of Canada
Institution Number: 003
Transit Number: 06702
Account Number: 402-199-4
Swift Code: ROYCCAT2
Beneficiary: North Plains Systems Corp

| | |
|---|---|
| Taxable | 0.00 |
| Non-Taxable | 2,400.00 |

| Total | 2,400.00 |
|---|---|
| | 0.00 |
| | 2,400.00 |

# EXHIBIT D



**WITHOUT PREJUDICE**

October 11, 2007

Ernest Quarles
Livid Media LLC
Atlanta, Georgia

**Re: Collections of past due amounts**

Dear Sir:

This letter provides formal complaint as to the non-compliance of payments terms, by Livid Media LLC, as set out in the Master License and Services Agreement ("MLSA") between North Plains Systems Corp. ("NPS") and Livid Media LLC ("Livid").

As outlined within section A, clause 4 of the MLSA, "the license fees shall be payable in three (3) installments, forty percent (40%) being due upon execution of the Agreement, forty percent (40%) being due on the date of shipment of the Software by North Plains to the Client, and the remaining twenty percent (20%) being due thirty (30) days from the date of the shipment of the Software by North Plains." All payments remain outstanding as of the date of this letter. The software was delivered by FTP on July 19th 2007. As such, all payments are past due. The invoices were provided to you, Ernest Quarles, VP of Livid, on July 18th (for the first 80%) and August 20th (for the remaining 20%).

NPS, through its Office Manager, Controller, and myself, VP of Global Sales, have attempted numerous times to reach out to you regarding assurance of payment. NPS has yet to receive any confirmation that the invoices due and outstanding are in the process of being paid.

NPS expects to receive payment on all outstanding invoices by end of day, October 19th 2007, failing which NPS intends to enforce its rights under the MLSA through appropriate legal proceedings.

Regards,

Julius da Costa
VP of Global Sales
North Plains Systems Corp.
416 345 – 1900 x. 300

# EXHIBIT E

Confirmation Report — Memory Send

```
                                Page       : 001
                                Date & Time: Oct-31-07  09:53am
                                Line 1     : +416 864 9223
                                Line 2     :
                                Machine ID : MG3 SERVICES
```

| | | |
|---|---|---|
| Job number | : | 585 |
| Date | : | Oct-31 09:52am |
| To | : | ☎12134059738816788681863 |
| Number of pages | : | 003 |
| Start time | : | Oct-31 09:52am |
| End time | : | Oct-31 09:53am |
| Pages sent | : | 003 |
| Status | : | OK |

Job number    : 585              *** SEND SUCCESSFUL ***

MINDEN
GROSS LLP

MINDEN GROSS LLP
BARRISTERS & SOLICITORS
145 KING STREET WEST, SUITE 2200
TORONTO, ON, CANADA M5H 4G2
TEL 416.362.3711 FAX 416.864.9223
www.mindengross.com

DIRECT DIAL          (416) 369-4169
USER ID              1213
E-MAIL       btemins@mindengross.com
FILE NUMBER          4059738

# FAX COVER SHEET

Date: October 31, 2007

| TO | COMPANY | FAX | TELEPHONE |
|---|---|---|---|
| Mr. Charles Vaughan | Livid Media LLC | 1 (678) 868-1863 | |

FROM:    BRIAN TEMINS            PAGES:    3 (including this cover sheet)

RE:    North Plains Group and Livid Media LLC

If you experience any difficulties in receiving this transmission, please call
Connie M. Gennuso @ (416) 369-4159.

MESSAGE:

Please see attached letter.

#1275163 | 4059738

The information contained in this facsimile telephone transmission is intended for the use of the individual or entity named herein and contains information that may be privileged and confidential. If the reader of this facsimile is not the intended recipient or the person responsible for delivering the facsimile to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this facsimile or its contents is strictly prohibited. If you have received this facsimile in error, please notify us immediately by collect telephone and return at our cost the original facsimile transmission to us at the above address. Thank you.



**MINDEN**
**GROSS** LLP

MINDEN GROSS LLP
BARRISTERS & SOLICITORS
145 KING STREET WEST, SUITE 2200
TORONTO, ON, CANADA M5H 4G2
TEL 416.362.3711 FAX 416.864.9223
www.mindengross.com

DIRECT DIAL                 416-369-4169
E-MAIL          btemins@mindengross.com
FILE NUMBER                    4059738

October 31, 2007

**WITHOUT PREJUDICE**

**VIA EMAIL AND FAX**

Charles Vaughan
Livid Media LLC
One Glenlake Parkway, Suite 700
Atlanta, Georgia
30328

Dear Mr. Vaughan:

**Re:    Indebtedness of Livid Media LLC to North Plains Systems Corp.**

Further to my letter to you dated October 22, 2007, as you are aware we have been retained by North Plains Systems Corp. ("**North Plains**") in respect of the outstanding receivables owing to it by Livid Media LLC ("**Livid**"). As of yet there has been no response received to the October 22, 2007 letter.

As you are well aware, Livid has not honored its legally binding commitment to pay North Plains the fees owed to it pursuant to the Master License and Services Agreement dated July 13, 2007 (the "**Agreement**"). Given Livid's failure to meet its obligations it is North Plains' position that Livid does not posses a valid license use the Software (as such term is defined in the Agreement). Accordingly, in addition to and/or in the alternate seeking payment of the amounts owed to North Plains, North Plains intends to vigorously pursue any claims that it may have with respect to your improper use of the Software, which may included without limitation the seeking of injunctive relief, as well as damages based on intellectual property infringement.

This letter is being written as a final courtesy prior to the commencement of litigation which North Plains intends to pursue as soon as practicable if a satisfactory response is not received prior to *November 7, 2007*.

Page 2



If you wish to discuss this matter with us, please contact us immediately either directly or through your solicitors.

Yours truly,
**MINDEN GROSS LLP**
Per:

Brian J. Temins
BJT/ss

c.c. via Email only    Dwayne Walker, North Plains Systems Corp.
    Grant Parobec, North Plains Systems Corp.
    Ernest Quarles, Livid Media LLC
    Aydin S. Caginalp, Manatt, Phelps & Phillips, LLP

#1274127 v1 | 4059738

# EXHIBIT F

**Robby Bernstein**

Subject:                   FW: Livid Media, LLC Account

---

**From:** Dwayne Walker
**Sent:** Wednesday, November 14, 2007 2:34 PM
**To:** 'charles.vaughn@lividmedia.com'
**Cc:** John Anderson; Ernest Quarles
**Subject:** RE: Livid Media, LLC Account

Gentlemen,

Based on the email below, and telephone conversations over the past week, Livid made a commitment to NorthPlains that full payment would be made for all outstanding invoices. To date, this commitment has not been met.

NorthPlains wishes to get the engagement back on the right track but failure from you to keep commitments has been very disappointing. I have left voice messages again this week, with no return communication. I have tried to prevent this matter from turning legal, but, by end of day tomorrow, Thursday November 15, 2007, this matter will be turned over to our New York legal counsel for filing of claim against Livid Media LLC.

Up until end of day tomorrow, the Company is still willing to not proceed with legal action if payment is made. Please call me to discuss.

Regards,

Dwayne Walker, CA
Corporate Controller
Northplains Systems Corp.
416 345 1900 x. 803

---

**From:** Charles Vaughn [mailto:charles.vaughn@lividmedia.com]
**Sent:** Wednesday, November 07, 2007 4:35 PM
**To:** Dwayne Walker
**Cc:** John Anderson; Ernest Quarles
**Subject:** Livid Media, LLC Account

Dwayne –

Thank you for the brief chat a moment ago. As discussed, we will be FedEx-ing out a payment to you covering the outstanding invoice(s) by the end of the week.

I apologize for the delay in getting t back to you recently. I can assure you now that I am fully immersed and back in the saddle here at Livid Media, LLC and look forward to moving ahead with your Asset Management tool.

Feel free to contact me anytime with any questions. I will personally see this matter through. Going forward, John Anderson, our controller, will be your primary contact concerning billing.

Regards,
Charles Vaughn

1



Charles Vaughn
President

**Livid Media, LLC**

| | |
|---|---|
| 100 Park Avenue | One Glenlake Parkway |
| Sixteenth Floor | Suite 700 |
| New York, New York 10017 | Atlanta, GA 30328 |
| Telephone (212) 551-3233 | Telephone (678) 638-6156 |
| Facsimile (212) 937-1921 | Facsimile (678) 623-3256 |
| Cellular (678) 778-8899 | Cellular (678) 778-8899 |
| charles.vaughn@lividmedia.com | charles.vaughn@lividmedia.com |

# EXHIBIT G

## ACCRUED INTEREST

at 1.5% per month from the Invoice date to January 16, 2008

| Invoice Number | Invoice Amount | Date of Invoice | Amount of Interest |
|---|---|---|---|
| 5784 | $108,000 | 7/18/2007 | $9,693.37 |
| 5785 | $6,200.00 | 7/18/2007 | $556.47 |
| 5815 | $27,000 | 8/20/2007 | $1,983.95 |
| 5823 | $9,600 | 8/27/2007 | $672.26 |
| 5845 | $2,400.00 | 9/10/2007 | $151.50 |
| 5848 | $2,339.54 | 9/13/2007 | $144.72 |
| 5867 | $2,400.00 | 9/28/2007 | $130.19 |
| | | | $13,332.46 |